# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

MELISSA POCHE                                          CIVIL ACTION

VERSUS

SID GAUTREAUX, ET AL                              NO. 10-450-BAJ-RLB

## RULING AND ORDER

Before the Court are two motions to dismiss, filed by Defendants East Baton Rouge ("EBR") District Attorney Hillar Moore (the "District Attorney) (Doc. 42), and EBR Sheriff Sid Gautreaux and Warden Dennis Grimes (the "Prison Officials") (Doc. 43), seeking orders from this Court dismissing Plaintiff Melissa Poche's ("Poche") Revised and Abridged First Amended and Restated Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Poche opposes both motions (Docs. 47 and 48). The Defendants have each filed a memorandum in response to Poche's memoranda in opposition. (Docs. 51 and 54). Oral argument is not necessary.

## I. Background

Poche filed her original Complaint against Defendants in July 2010 alleging various constitutional violations pursuant to 42 U.S.C. § 1983, statutory violations under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"), as well as state law claims, all related to her alleged unlawful detention for seven months. (Doc. 1 at 2). Later, in June 2011, Poche was

---

[1] The Prison Officials filed a joint motion to dismiss, (Doc. 43); the District Attorney filed his motion to dismiss on his own behalf, (Doc. 42).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 1 of 29

allowed to file the Revised and Abridged First Amended and Restated Complaint ("Amended Complaint") that is the subject of this order. (Doc. 37). As did her original complaint, Poche's Amended Complaint seeks damages for various constitutional violations under § 1983, statutory violations under the ADA and RA, and false imprisonment and negligence under Louisiana state law. (Doc. 38 at ¶¶ 56–95).

Accepting as true all of the "well-pleaded facts," *see Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted), Poche's complaint makes out the following: Poche is an uninterdicted mentally ill female currently residing in a nursing facility. (Doc. 38 at ¶ 1). Poche suffers from various mental illnesses, including schizophrenia, bipolar disorder, and "organic brain disorder." (*Id.* at ¶ 9). Further, Poche's IQ is 73, "which classifies her as having borderline mental deficiency." (*Id.*). At all relevant times, Poche's "deficiencies were . . . readily apparent and obvious to any reasonable observer." (*Id.*).

On July 22, 2009, when Poche was 54 years old, she engaged in "bizarre and irrational behavior" at a Baton Rouge area convenience store, causing a store employee to call the EBR Sheriff's Department. (*Id.* at ¶¶ 9, 11). The Sheriff was already well-aware of Poche's "debilitating mental condition," having responded to "several instances of bizarre behavior" by Poche in the preceding weeks, including her report that she was "raped on July 10 with bizarre circumstances surrounding the report of rape." (*Id.* at ¶ 10). When Sheriff's Deputies arrived at the convenience store, they found Poche "wandering across the street." (*Id.* at 11).

2

However, Poche "walked away" from the Deputies when they approached, causing the Deputies to "manhandle her," and "prompting [Poche] in her irrational state to try to wrestle away." (*Id.* at 11).

As a result of this altercation, Poche was arrested and charged with misdemeanor counts for: (1) disturbing the peace; (2) remaining after forbidden; and (3) resisting arrest. (*Id.*). Poche was also charged with a fourth count, "an old misdemeanor charge for $93.28 in checks that [she] had allegedly bounced in 2006," but had since paid off. (*Id.*). Following her arrest, Poche was placed in the custody of the Prison Officials at the EBR Prison. (*Id.* at ¶ 12).

The Prison Officials did not bring Poche before a magistrate to determine whether probable cause supported her arrest. (*Id.* ¶ 18). In fact, during her entire seven months in prison, Poche's only court appearance occurred on July 23, the day after her arrest. (*Id.* at ¶ 15). At this proceeding, Poche and "a large group of other prisoners" appeared "by video link before an unelected court commissioner who was not a judge." (*Id.* at ¶ 15). Poche alleges that the "sole purpose" of this "jail callout" procedure was "to set bond pursuant to a preset bail schedule." (*Id.*). Poche did not receive a probable cause determination, (*id.* at ¶ 18), nor was she asked if she had counsel, or offered counsel. (*Id.*). Indeed, Poche claims that throughout her time in custody she was never brought before a judge for the purpose of appointment of counsel, (*id.* at ¶ 34), despite Louisiana law which requires that such a hearing occur within "seventy-two hours from the time of the arrest," La. C. Cr. P. Ann. art. 230.1. (Doc. 38 at ¶ 15). Poche asserts that the Prison Officials' failures to bring

her before a magistrate for a probable cause determination, and before a judge for appointment of counsel, were the result of official policies and established customs to instead "place arrestees [in] a 'jail callout' procedure before a non-judge," knowing full-well that "the purpose of such procedure was *not for* [a probable cause determination or] the assignment of counsel," and, further, that "attorneys were in fact routinely not assigned to defendants during such 'jail callout' procedures." (*Id.* at ¶¶ 16, 17–20).

On August 18, almost a month after her arrest, the Prison Officials forwarded Poche's file to the District Attorney. (*Id.* at ¶ 22). Attached to the front of Poche's file was a "so-called 'green sheet,'" (*id.*), a form used by the District Attorney and his employees to quickly identify the charges on which a detainee is being held, and to determine whether and how to proceed with the prosecution, (*see id.* at ¶ 25). However, while Poche's file itself "listed and described all four of the charges brought [against her] by the deputies," Poche's green sheet "listed [just] one of the four charges against [her], namely Resisting an Officer." (*Id.* at ¶ 22). Poche alleges that the Prison Officials', and/or District Attorney's failure to properly fill out Poche's green sheet was the result of lax training and improper oversight. (*Id.* at ¶¶ 23–26).

Upon receiving Poche's file and reviewing her green sheet, the Assistant District Attorney assigned to Poche's case, Kory Tauzin ("Tauzin"), "rapidly decided to drop all of the charges against [her]." (*Id.* at ¶¶ 23, 27). Accordingly, on August 25, "[Tauzin] checked 'No Bill' . . . because 'Police Action Sufficient'" on the cover of

Poche's file. (*Id.* at ¶ 27). "The DA's computerized records further showed . . . 'No Bill-Police Action Sufficient' for all four charges." (*Id.*). Tauzin also "wrote 'N/B-PAS' on the green sheet." (*Id.*) "The DA's office then 'Dead Filed' the record, considering the case closed." (*Id.*).

Unfortunately for Ms. Poche, this message was not properly conveyed to the Prison Officials. Instead, Poche alleges that due to inadequate policies, lax training and insufficient oversight, the "secretarial personnel" that prepared Poche's "Authority to Change Booking" form—the form required to authorize the Prison Officials to release Poche from custody—"listed only one of the four charges against her." (*Id.* at ¶¶ 28–30). Poche claims that Tauzin signed off on the form as written "without checking the booking form against the file to assure that all intended charges [were] included"—again, due to lax training and insufficient oversight. (*Id.* at ¶ 29). As a result, upon receipt of the signed booking form, the Prison Officials "did not release [Poche] from prison, apparently believing there were still pending charges against her." (*Id.* at ¶ 28).

Poche further asserts that the District Attorney never followed up with the Prison Officials to ensure that she was released after the charges against her were dropped. (*Id.* at ¶ 30). Nor did the Prison Officials check Poche's "Authority to Change Booking" form against her file or her computerized record to determine whether it was accurate and complete. (*Id.* at ¶¶ 32–33). Instead, Poche claims that due to "poor policies and customs," which included lax training and insufficient oversight, the Prison Officials "continue[d] to hold [Poche] in prison, without

5

question and without attempting any communication whatsoever with the District Attorney's office to determine the Assistant District Attorney's intent concerning [Poche's] release," despite having received "a booking form . . . that list[ed] some but not all of the charges pending." (*Id.* at ¶¶ 32–33). Poche alleges that the Prison Officials' and District Attorney's failure to properly fill out her paperwork, coupled with their failure to effectively communicate between offices, caused Poche to languish in prison "for seven months, until February of 2010, with no charges pending against her, with no appearance before a judge or magistrate, with no determination of probable cause, with no attorney offered to her or appointed for her, and with no one doing anything about her case." (*Id.* at ¶ 34).

Poche's situation was compounded by "her mental disabilities and deficiencies," which rendered her unable to advocate effectively on her own behalf without the benefit of counsel. (*Id.*). However, not all EBR Prison employees were unaware of and/or indifferent to Poche's plight. Indeed, Poche alleges that on September 23, 2009, "the issue of [her] improper confinement without charges was *specifically brought to the attention of the EBR District Attorney's office* by a social worker at the EBR Prison." (*Id.* at ¶ 35). Unfortunately, the District Attorney failed to act on this information because he never received it. (*Id.* at ¶¶ 35–36). Poche contends that the District Attorney did not get the message due to "haphazard policies" and insufficient training and oversight, which allowed for "untrained secretarial personnel to handle telephone calls directly relevant to pending cases without any obligation to pass on the contents of phone calls to the

responsible ADAs, to follow up in any way, or even to put a message in the file."
(*Id.* at ¶ 36).

Poche's seven-month stint in prison was not an easy one. Because of her "mental illnesses and deficiencies over which she had no control," Poche continually "engage[d] in bizarre and irrational behavior." (*Id.* at ¶ 37). But despite having been diagnosed as a schizophrenic by the prison doctor as early as August 4, the Prison Officials failed to provide Poche any accommodation her disabilities. (*Id.* at ¶ 38). Instead, Poche claims that due to "inadequate and improper customs and policies"—by which "deputies and employees were expected to and in fact did treat persons with severe mental disabilities as disciplinary problems and to punish such prisoners for failing to act like a non-disabled person would be expected to act"— Poche was "*repeatedly punished* . . . with lockdowns and solitary confinement when she exhibited pronounced symptoms of her mental illness over which she had no control." (*Id.* at ¶¶ 38–39). Further, consistent with "entrenched custom and routine practice," it is alleged that the Prison Officials failed to: (1) "bring [Poche's] mental deficiencies . . . to the attention of the district attorney, judge, commissioner or magistrate;" (2) "undertake any effort to see that [Poche] obtained counsel or properly waived counsel;" (3) "undertake any effort to obtain assistance or accommodation for [Poche's] severe disabilities;" and (4) "make any effort to provide adequate monitored psychiatric and other mental health services to [Poche] or to transfer [her] to [a] mental health facilit[y]." (*Id.* at ¶ 41).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 7 of 29

On October 15, 2009, Poche was transferred from EBR Prison to the Riverbend Detention Center in East Carroll ("EC") Parish, "due to lack of jail space in EBR Prison." (*Id.* at ¶ 43). At the time of transfer, Poche "was specifically known to be schizophrenic and bipolar . . . by prison employees in both parishes." (*Id.*). Despite this knowledge, and despite the "obvious" nature of Poche's disabilities, Poche states that the EC Sheriff and Riverbend Warden also failed to implement any policies or regulations to accommodate Poche's disabilities. (*Id.*). Rather, according to Poche, "the Riverbend Warden and the EC Sheriff repeatedly and continuously *punished [Poche]* with solitary confinements and lockdowns, like their EBR counterparts, for behavior over which she had no control . . . ." (*Id.*).

Poche was housed at Riverbend from October 15 to November 24, 2009, and again from December 4, 2009 through late February 2010.[2] (*Id.* at ¶ 44). During this time, again due to alleged insufficient policies and procedures, the Prison Officials failed to make any effort to assure that Poche was being "properly treat[ed] . . . in accordance with [her] constitutional and federal statutory rights." (*Id.* at ¶ 50).

Poche remained imprisoned under the auspices of EBR authorities until February 2010, when, after conducting an internet search, family members discovered her name among EBR Prison inmates. (*Id.* at ¶ 52). Poche states that only after a month-long "campaign of telephone calls and emails with the EBR Sheriff's Office [did Poche's family] find out where she was being held and on what

---

[2] From November 24 to December 4, 2009, Poche was temporarily relocated back to EBR Prison. (Doc. 38 at ¶ 44).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 8 of 29

charges." (*Id.*). Poche further claims that even when it was clear that she was being illegally detained, the Defendants still failed to release her from prison. (*Id.*). Indeed, she alleges that the District Attorney's first reaction "upon learning of [the] blunders and failures in connection with [Poche's] case in mid-February . . . was to try to reinstitute one of the charges that [was] previously and deliberately dropped[.]" (*Id.* 53). Allegedly, this attempt by the District Attorney's office to cover its tracks for Poche's "seven-month wrongful imprisonment" was also the result of insufficient policies, training and oversight, which caused ADA Tuazin to "blindly sign[] the bill bringing new charges against [Poche]" after it had been prepared by "some unknown person in his office." (*Id.* at ¶ 54, 55). Poche asserts that "[i]t was not until February 25, 2010, the day before the Baton Rouge Advocate ran [Poche's] story, that [she] was finally released from prison to a mental hospital." (*Id.* at ¶ 52).

Based on these alleged facts, Poche sued the District Attorney and the Prison Officials, among others, in their official capacities under 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment rights to due process and equal protection; her Fourth Amendment right to be free from unreasonable seizures of her person; and her Sixth Amendment right to counsel. (*Id.* at ¶¶ 57, 65). Against the Prison Officials in their official capacities, Poche also alleged a violation of her Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at ¶ 66). She also asserted that the Prison Officials violated her rights under Title II of the ADA and Section 504 of the RA by failing to appropriately accommodate, and by

9

punishing her for, her mental disabilities. (*Id.* at ¶¶ 70–80). Finally, against all Defendants Poche alleged Louisiana state law torts of false imprisonment and negligence. (*Id.* at ¶¶ 81–96). Specifically, Poche alleged that the District Attorney and the Prison Officials were personally liable under Louisiana law for "acts and omissions in the implementation and non-implementation of policies and customs" that resulted in her illegal detention," and also liable in *respondeat superior* for "the acts and omissions of their respective employees." (*Id.* at ¶¶ 82, 90).

The District Attorney and the Prison Officials now seek an order from this Court dismissing Poche's claims, pursuant to Rule 12(b)(6). (Docs. 42 and 43). For his part, the District Attorney argues that Poche's constitutional claims must be dismissed because she is proceeding under a "failure to train or supervise theory" and has failed to allege facts sufficient to establish "an 'official policy' which was 'adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" (Doc. 42 at 8). The District Attorney also argues that, in any event, "Poche has failed to allege [any] federal constitutional violation caused by the District Attorney." (*Id.* at 17, 17–27). Finally, the District Attorney argues that Poche's state law claims are barred by absolute prosecutorial immunity. (*Id.* at 27–28).

For their part, the Prison Officials also contend that Poche has failed to plead sufficient facts to establish "deliberate indifference" as to her inadequate policies and training claims. (*See* Doc. 43 at 6–12). Further, like the District Attorney, the Prison Officials argue that Poche's complaint must be dismissed because she "has

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 10 of 29

failed to allege [any] underlying constitutional violation." (*Id.* at 14–23). Next, the Prison Officials argue that Poche's statutory claims under Title II and Section 504 fail because "Poche does not allege that she was treated any differently from any other prisoners who exhibited the same type of conduct." (*Id.* at 26). Finally, the Prison Officials argue that Poche's state law claims must be dismissed because they are entitled to "policymaking or discretionary acts" immunity on these claims, under La. Rev. Stat. Ann. § 9:2798.1. (*Id.* at 27–30).

Poche has filed memoranda in opposition to the District Attorney's and the Prison Officials' motions to dismiss. (Docs. 47 and 48). The District Attorney and the Prison Officials have filed reply memoranda. (Docs. 51 and 54).

## II.   **Standard of Review**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 11 of 29

678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

Further, the Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

III. **Analysis**

    A.    **Poche's Constitutional Claims Against Moore, Gautreaux, and Grimes**

        1.    **Poche has Alleged Facts Sufficient to Establish a Claim that EBR Authorities Adopted Policies with Deliberate Indifference to the Obvious Fact that Constitutional Violations Would Result**

Under *Monell v. Department of Social Services*, local government agencies, such as district attorney's offices, can only be held liable for constitutional torts under § 1983 "when execution of a government's policy or custom, whether made by

12

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. 658, 694 (1978). Thus, to succeed on a § 1983 claim against a local government entity, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for those deprivations resulting from the decisions of those officials whose acts may fairly be said to be those of the governmental entity, and ensures that there is no risk of imposing *respondeat superior* liability. *Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997).

As an initial matter, the District Attorney and the Prison Officials argue that Poche's claims fail because she has not shown that the alleged constitutional violations were the result an official policy or custom. (Doc. 42 at 8, 8–16; *see also* Doc. 43 at 6–13). This is so, the Defendants contend, because Poche's complaint does not contain: (1) allegations that the Defendants' policies, including their failure to properly train or supervise their employees, led to similar constitutional deprivations in the past, (Docs. 42 at 9, 43 at 9–10); or (2) allegations that the unconstitutional consequences of failing to train were so patently obvious that the Defendants should be liable without proof of a pre-existing pattern of violations. (Docs. 42 at 12, 43 at 9). Poche responds that her complaint survives the Defendants' Rule 12(b)(6) challenge because it adequately alleges that the

Defendants' failure to act would obviously lead to the type of constitutional violations that she suffered. (*See* Docs. 47 at 6–9, 48 at 8–9).

An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself"; and (3) "even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Bryan Cnty. Comm'rs*, 520 U.S. at 417–18 (quotation marks and alterations omitted).

At this stage in the litigation, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). As stated, this requires merely that the complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See id.* (quoting *Iqbal*, 556 U.S. at 678). Here, although Poche has not alleged a pattern of similar constitutional violations, her complaint is replete with allegations that the Defendants' failures to implement policies designed to prevent the constitutional deprivations alleged, and to adequately train their employees in such tasks as processing paperwork related to detention, created such "obvious" dangers of constitutional violations that the

14

Defendants can all be reasonably said to have acted with "conscious indifference." (*E.g.* Doc. 38 at ¶¶ 24, 25, 26, 29, 30, 31, 32, 36, 39, 40, 41, 43, 46, 47, 48, 50, 55, 63). It is hardly speculative that a policymaker's failure to develop policies for ensuring that a pre-trial detainee is released from prison once the decision has been made to drop charges against her would result in an obvious risk for constitutional violations. *See Whirl v. Kern*, 407 F.2d 781, 785–86 & n.4, 793 (5th Cir. 1968) (holding that a "breakdown in communication" between the District Attorney, the Court, and the Sheriff, which led the plaintiff to "languish[] in jail for almost nine months after all charges against him were dismissed," was sufficient to sustain the plaintiff's Fourteenth Amendment due process claim under § 1983). Likewise, it is certainly plausible that the District Attorney's failure to properly train his employees in the preparation of an Authority to Change Booking form, and the Prison Officials' and/or District Attorney's failure to train employees in how to properly fill out a green sheet, would result in unconstitutional consequences. *See Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) ("The Court . . . [has not] foreclose[d] the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.").[3]

---

[3] The District Attorney also argues that Poche's complaint must be dismissed under *Thompson* because her failure to train claim is based on a failure to provide training in "the execution of mundane clerical tasks," such as "filling out forms, processing forms, checking forms, and answering the telephone," (Doc. 42 at 13), which involve "precept[s] [and] principle[s] that could . . . be learned, even if not previously known, by a person of ordinary sensibilities," (*id.* at 14). This argument fails for two reasons. First, it ignores that Poche's complaint alleges not only a failure to train in existing procedures, but also a failure to implement additional procedures to prevent the constitutional violations alleged. More fundamentally, this argument stretches *Thompson's* reasoning too far. In *Thompson*, the Supreme Court rejected the plaintiff's claim that "the *Brady* violation in his case was

Case 3:10-cv-00450-BAJ-RLB    Document 59    09/17/13    Page 15 of 29

In sum, Poche has sufficiently alleged "an official policy or custom" to avoid dismissal under the first prong of the *Monell* analysis. *Rivera*, 349 F.3d at 247. And because Poche's complaint alleges sufficient facts to make out a claim that the Defendants were deliberately indifferent to the need for additional policies and training aimed at "control[ling] the agents of the government," it is also sufficient to satisfy the second prong of the *Monell* analysis—specifically that the Defendants can be charged with actual or constructive knowledge of that deficiency. *Id.*; *see Comm'rs of Bryan Cnty.*, 520 U.S. at 418 ("Deliberate indifference is . . . treated, as it is elsewhere in the law, as tantamount to intent, so that inaction by a policymaker deliberately indifferent to a substantial risk of harm is equivalent to the intentional action that setting policy presupposes."). Thus, whether Poche's § 1983 claims survive turns on *Monell's* third prong: whether she has pleaded constitutional violations whose "'moving force' is an inadequate policy or custom." *Rivera*, 349 F.3d at 247.

> **2. Poche has Alleged Facts Sufficient to Establish Fourteenth Amendment Due Process Violations by the District Attorney and the Prison Officials**

---

the 'obvious' consequence of [the District Attorney having] fail[ed] to provide specific *Brady* training" to Assistant District Attorneys, 131 S. Ct. at 1361, holding that a "district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in the usual and recurring situations with which the prosecutors must deal," *id.* at 1363 (quotation marks and alterations omitted). The Court's analysis, however, hinged on its observation that beginning in law school, and extending throughout their careers, "[a]ttorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *Id.* at 1362–63. Here, unlike the plaintiff in *Thompson*, Poche has not alleged a failure to train in legal precepts. Instead, as noted by the District Attorney, she alleges a failure to train in "mundane clerical tasks," which, as her case demonstrates, may have significant constitutional consequences if not done correctly.

16

The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause offers two kinds of protection. "The most familiar office of that Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Additionally, "the substantive component of the Clause . . . protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (quotation marks omitted).

The Defendants argue that Poche's complaint fails to make out either a procedural or substantive due process violation. First, they contend that Poche has not alleged a procedural due process violation because under the *Parratt/Hudson*[4] doctrine, the state of Louisiana afforded her an adequate remedy for the deprivation of liberty alleged here—specifically, "Louisiana's *habeas corpus* procedure." (Docs. 42 at 20, 43 at 15). Next, they argue that Poche has not alleged a substantive due process violation because Poche's seven-month detention resulted from mere negligence—specifically, "a clerical error"—and "the deprivation of a 'liberty interest,'" including "extended incarceration," "is not a violation of substantive due process if it is the product of negligent rather than intentional misconduct," (*id.* at 22–25, Doc. 43 at 16–17).[5]

---

[4] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981).

[5] The District Attorney also argues that Poche's claim fails to state a substantive due process violation insofar as his conduct is concerned because Louisiana law imposes no duty on the District

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 17 of 29

The Defendants' arguments fail. First, their reliance on *Parratt/Hudson* to argue that Poche's procedural due process claims should be dismissed is misplaced. The Supreme Court has repeatedly stated that "*Parratt* . . . was dealing with a . . . 'random and unauthorized act by a state employee . . . [and was] not a result of some established state procedure,'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982) (quoting *Parratt*, 451 U.S. at 541), and, further, that *Parratt* "'was not designed to reach . . . a situation' where the deprivation is the result of an established state procedure," *Hudson*, 468 U.S. at 532 n.13 (quoting *Logan*, 455 U.S. at 436). In her complaint, Poche alleges that "[i]t was the official policy and established custom of the EBR Sheriff and Warden" to skirt constitutional requirements related to procedures for (1) establishing probable cause to detain; (2) arraignment; (3) bail; and (4) appointment of counsel. (Doc. 38 ¶¶ 13–22). As to the District Attorney, Poche has alleged, among other things, that it was the District Attorney's "policy and custom . . . to sign charging papers such as Bills of Information without reading them, without checking their correctness, and without even knowing what [he was] signing." (*Id.* at 55). Poche further alleges that these established state procedures resulted in a "depriv[ation] of her liberty without due process in violation of the 14th Amendment." (*Id.* at ¶¶ 56, 65). These allegations,

---

Attorney to ensure that a prisoner is released following the dismissal of charges against her. (Doc. 42 at 22). This argument is simply beside the point. Whether the District Attorney had a duty under Louisiana law to ensure that Poche was released following the dismissal of charges against her is irrelevant to determining whether the District Attorney, "while acting under color of law, deprived [Poche] of a right secured by the Constitution and laws of the United States," which in this context requires that Poche show that the District Attorney imprisoned her in violation of her Fourteenth Amendment due process rights. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 18 of 29

accepted as true, are sufficient to survive a Rule 12(b)(6) motion to dismiss for failure to state a procedural due process violation.[6]

Likewise, Poche has adequately alleged a substantive due process violation. The Fifth Circuit has instructed that "[w]hile the core of substantive due process is protection from arbitrary government action, only the most egregious official conduct is arbitrary in the constitutional sense." *Coleman v. Dretke*, 395 F.3d 216, 224 (5th Cir. 2004) (quotation marks omitted). Thus, conduct sufficient to "support a substantive due process claim is conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 224–25. Stated differently, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Poche's complaint alleges facts that are sufficient to make out more than mere negligence by the Defendants. For example, against the District Attorney, Poche alleges: (1) after obtaining "clear direct knowledge . . . that [she] was being wrongfully and illegally held" due to established policies and practices in his office, the District Attorney still failed to correct the mistakes that caused her to be detained, (Doc. 38 at ¶ 35); and (2) to cover up his "failures in connection with [Poche's] case," the District Attorney "made a conscious decision to bring belated charges" against her, (*id.* at ¶¶ 53–54). Against the Prison Officials, Poche alleges intentional, "repeated punishments . . . for acts she could not control, and [a] failure

---

[6] Aside from being inapplicable, the Defendants' *Parratt/Hudson* argument is absurd to the extent that it suggests that Louisiana's *habeas corpus* procedures were an "adequate remedy" for Poche. (Docs. 42 at 20, 43 at 15). It beggars reason to argue that a schizophrenic individual of borderline intelligence who was also suffering from other documented disorders "could have invoked at any time Louisiana's *habeas corpus* procedure." (Doc. 42 at 20).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 19 of 29

to provide any reasonable accommodation for her [obvious] disabilit[ies]." (*Id.* at ¶ 42). These allegations are sufficient to allow this Court to draw the "reasonable inference," *Iqbal*, 556 U.S. at 678, that the Defendants' actions and omissions were "intended to injure" Poche in a way that is "unjustifiable by any government interest," *Dretke*, 395 F.3d at 224–25.

### 3. Poche has Alleged Facts Sufficient to Establish a Fourteenth Amendment Equal Protection Violation by the Prison Officials

Poche also alleges that the Defendants' actions violated her right to equal protection under the Fourteenth Amendment. (Doc. 38 at ¶ 65). "The equal protection clause of the fourteenth amendment is essentially a mandate that all persons similarly situated must be treated alike." *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). Thus, to make out a violation of the equal protection clause, a plaintiff must allege facts sufficient for the Court to draw the reasonable inference that "the challenged government action classifies or distinguishes between two or more relevant groups." *Id.* (quotation marks omitted). Here, Poche alleges that she "was discriminated against in application of the laws on the basis of her mental illnesses and defects." (Doc. 38 at ¶ 65). Specifically, she alleges that the Prison Officials "acted with a discriminatory animus toward" her because she was mentally disabled, (*id.* at ¶ 77), and that she was "repeatedly" and "deliberately" punished for, and discriminated against, on that basis, (*id.* at ¶¶ 38, 51, 74–77). Thus, as to the Prison Officials, Poche has alleged facts sufficient to sustain her equal protection claim because she has alleged that she was "treated differently

20

than similarly situated individuals," specifically the other EBR prisoners. *See Rolf*, 77 F.3d at 828. As to the District Attorney, however, Poche has failed to state a claim for an equal protection violation, because she not provided any indication that the District Attorney was involved in the decision to punish her, or discriminate against her on the basis of her disabilities.

### 4. Poche has not Alleged Facts Sufficient to Establish Additional Constitutional Violations by the District Attorney or the Prison Officials

Poche's other constitutional claims fail the *Twombly/Iqbal* standard. First, Poche has failed to state a claim that the Defendants violated her right to a probable cause determination under the Fourth Amendment because "an adversary hearing is not required" for a probable cause determination, and "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Baker v. McCollan*, 443 U.S. 137, 143 (1979). Poche's complaint alleges simply that she was never brought before a magistrate for a probable cause determination in accordance with Louisiana law. (Doc. 38 at ¶¶ 17–18). It does not allege, however, that the Defendants otherwise deprived her of the right to a probable cause determination by another means. Indeed, in her reply to the Prison Officials' Motion to Dismiss, Poche clarifies that she "makes no representation one way or the other . . . as to whether there was or was not a valid arrest warrant for one of the four charges brought against [her]." (Doc. 48 at 16 n.5). Thus, having failed to rule out the possibilities that: (1) a probable cause

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 21 of 29

determination was made in a forum other than in an appearance before a magistrate; and (2) she was arrested pursuant to a valid warrant on her old check fraud charge, Poche has failed to state a claim that the Defendants violated her right to be free from unreasonable seizures. *See Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996) ("The Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial. That detainee has recourse to due process protections, not protection against unreasonable seizures after a lawful seizure has occurred.").

Next, Poche's allegation that the Defendants' actions violated her Sixth Amendment right to counsel fails because the right to counsel "does not attach until . . . the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (quotation marks omitted). Here, Poche's claim is that she was held "without arraignment, without a probable cause determination," and without any other hearing that would indicate the initiation of adversary judicial criminal proceedings. (Doc. 38 at ¶¶ 13–21). Indeed, according to her complaint, the only judicial hearing Poche received during her seven month ordeal was an informal "jail callout" video procedure before "an unelected court commissioner who was not a judge, the sole purpose of such 'jail callout' being to set bond pursuant to a preset bail schedule." (*Id.* at ¶ 15). Poche fails to allege that she was informed of the charges against her at this "jail callout," and thus, quite clearly, has failed to state sufficient facts for this Court to determine

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 22 of 29

that her Sixth Amendment right to counsel ever attached. *See Rothgery*, 554 U.S. at 213 ("[A] criminal defendant's initial appearance before a judicial officer, *where he learns the charge against him* and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." (emphasis added)). In any event, even if this Court assumes that Poche *was* informed of the charges against her at this "jail callout," thus triggering her right to counsel, Poche has not pleaded any facts to show that a policy or failure to train by the District Attorney or the Prison Officials was the "moving force" behind the "unelected court commissioner['s]" failure to appoint counsel to represent her. *See Rivera*, 349 F.3d at 247.

Finally, Poche's claim that the Prison Officials violated her right to be free from cruel and unusual punishment under the Eighth Amendment fails because the Eighth Amendment's ban on cruel and unusual punishments is only applicable after a formal adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535–36 & n.16 (1979). Poche's complaint alleges abuse that occurred prior to an adjudication of guilt and, thus, is properly analyzed "under the Due Process Clause of the Fourteenth Amendment." *Thompson*, 245 F.3d at 457.

### B. Poche's Federal Statutory Claims Against the Prison Officials

Poche also alleges that the Prison Officials violated her rights under Title II of the ADA and Section 504 of the RA by "fail[ing] to implement policies and customs that would provide a reasonable accommodation for persons suffering from severe mental disabilities," including "mental health services," and means to ensure

23

that "such persons [are] brought before a judge in a timely manner[, are] . . . represented by counsel and otherwise receive[] due process." (Doc. 38 at ¶ 74).

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Given the similarity between Title II and Section 504, the Fifth Circuit has instructed that "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

To make out a violation of Title II of the ADA (and, by extension, Section 504 of the RA, *see id.*), a plaintiff must allege facts sufficient to demonstrate:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). Poche's complaint satisfies these requirements. First, Poche has pleaded facts sufficient to allege that she is a "qualified individual" within the meaning of the ADA and RA. 42 U.S.C. § 12102(1)(A) (defining disability to include a "mental

24

impairment that substantially limits one or more major life activities"); *see* 29 U.S.C. § 705(9)(B) ("The term 'disability' means . . . the meaning given it in section 12102 of Title 42."). She has also pleaded facts sufficient to establish that the Prison Officials represent a "public entity." *See* 42 U.S.C. § 12131(1)(A)–(B) (defining "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State"); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II authorizes complaints concerning conditions of confinement in state prisons). Finally, as explained with regard to Poche's Fourteenth Amendment due process claim, her complaint is replete with factual allegations supporting her assertion that the Prison Officials "fail[ed] to implement . . . reasonable accommodation[s] for persons suffering from severe mental disabilities," (Doc. 38 at ¶ 73). The Supreme Court has expressly contemplated that the same facts that establish a constitutional violation for failure to accommodate "disability-related needs" may also form the basis of claims under Title II, particularly where such violations involve "deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, [and] medical care." *See id.* at 157–58 (discussing a Title II claim based on allegations that also constituted a violation of the Eighth Amendment); *see also Thompson*, 245 F.3d at 457 (holding that pretrial detainees' "constitutional right . . . not to have their serious medical needs met with deliberate indifference on the part of the confining officials" is protected by the Fourteenth Amendment due process clause).

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 25 of 29

In sum, Poche has alleged sufficient facts to survive the Prison Officials'

challenge to her Title II and Section 504 claims.

### C.   Poche's State Law Claims Against the District Attorney and the Prison Officials

Finally, the Defendants argue that they are entitled to immunity on Poche's

state law claims for false imprisonment and negligence.  Specifically, the District

Attorney argues that he is entitled to absolute prosecutorial immunity because

"Poche's state law claims arise from paperwork appurtenant to a prosecutorial

function, namely the decision to judicially charge [or not] an arrestee."  (Doc. 42 at

28).  The Prison Officials argue that they are protected by policymaking or

discretionary act immunity under La. Rev. Stat. Ann. § 9:2798.1 because Poche has

"failed to allege a state law policy or regulation which specifically prescribed [their]

conduct," and, further, because "any policies and procedures or lack thereof

regarding the retention of prisoners and the treatment of prisoners would be

grounded on policy considerations."  (Doc 43 at 30).

Poche has alleged sufficient facts to survive the District Attorney's claim for

dismissal on absolute prosecutorial immunity grounds.  In *Knapper v. Connick*, the

Louisiana Supreme Court explained that absolute prosecutorial immunity does not

apply "where prosecutors act in an investigatory, administrative, ministerial or

other role that has no functional tie to the judicial process."  96-0434 (La. 10/15/96),

681 So. 2d 944, 950.  The Court clarified that in such instances, "only a qualified

immunity is afforded."  *Id.*  Poche's complaint alleges, among other things, that

*following* the District Attorney's decision to dismiss the charges against her on

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 26 of 29

August 25, 2009, the District Attorney failed to act to secure her release even when "the issue of [her] improper confinement without charges was *specifically brought to the attention of the EBR District Attorney's office*." (Doc. 38 at ¶ 35). This allegation of a failure to act "has no functional tie" to the decision of whether or not to prosecute Poche. *Knapper*, 681 So. 2d at 950. And although *Knapper* indicates that the District Attorney *may* be entitled to "a qualified immunity" on Poche's claims, *id.*, the District Attorney has failed to make this argument.

The Prison Officials' claim to discretionary function immunity is equally unavailing. Section 9:2798.1's text is clear, and the Louisiana Supreme Court has emphasized, that discretionary function immunity only "applies to 'policymaking or discretionary acts.'" *Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138 (La. 5/20/03), 851 So. 2d 959, 967 (quoting § 9:2798.1). Here, Poche's negligence and false imprisonment claims are based on her allegations that the Prison Officials failed to fulfill their obligations under La. C. Cr. P. Ann. art. 230.1, which *requires* that "[t]he sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel." Quite clearly, the Prison Officials had a mandatory duty under art. 230.1. Poche's allegation that they failed to fulfill this duty is sufficient to defeat the motion to dismiss on the basis of immunity under § 9:2798.1. *Cf. Gregor*, 851 So. 2d at 967–68.

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 27 of 29

IV.   **Conclusion**

Accordingly,

**IT IS ORDERED** that the District Attorney's and the Prison Officials'
**Motions to Dismiss (Docs. 42 and 43)** are **GRANTED IN PART** and **DENIED
IN PART**.

1) Against the District Attorney, Poche has sufficiently alleged a violation of her
   Fourteenth Amendment right to due process under 18 U.S.C. § 1983, as well
   as Louisiana state law claims for negligence and false imprisonment.  To the
   extent that the District Attorney's Motion to Dismiss (Doc. 42) seeks to
   dismiss these claims, it is **DENIED**.  To the extent that the District
   Attorney's Motion to Dismiss requests dismissal of Poche's Fourth
   Amendment, Sixth Amendment, and Fourteenth Amendment equal
   protection claims against the District Attorney, it is **GRANTED**.

2) Against the Prison Officials, Poche has sufficiently alleged violations of her
   Fourteenth Amendment rights to due process and equal protection under 18
   U.S.C. § 1983, and violations of her federal rights under Title II of the ADA
   and Section 504 of the RA, as well as Louisiana state law claims for
   negligence and false imprisonment.  To the extent that the Prison Officials'
   Motion to Dismiss (Doc. 43) seeks to dismiss these claims, it is **DENIED**.  To
   the extent that the Prison Officials' Motion to Dismiss requests dismissal of
   Poche's Fourth Amendment, Sixth Amendment, and Eighth Amendment
   claims against the Prison Officials, it is **GRANTED**.

Case 3:10-cv-00450-BAJ-RLB   Document 59   09/17/13   Page 28 of 29

Baton Rouge, Louisiana, this $\underline{17^{th}}$ day of September, 2013.


BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA